Morning, Your Honors. May it please the Court. My name is Christina Hasby. I represent the plaintiffs. I'm from Disability Rights, New York. The lower court erred when it dismissed this case that Mr. Lugo and Ms. Seaton brought, alleging that their hometown, the City of Troy, New York, discriminates against them because of their disability. In this case, Mr. Lugo and Ms. Seaton challenged the City of Troy's failure to construct and maintain its networks of sidewalks, curb cuts, and crosswalks that all make up, in total, the pedestrian right-of-way, pedestrian program, so that it is an accessible program for them as wheelchair users. To a wheelchair user. Is the relief that they're seeking, is it a remedy that applies to the entire City of Troy? Yes, Your Honor. I mean, wouldn't the district court be right that it's not clear how they're injured by, you know, a number of sidewalks or other facilities that they, there's no reason to believe they're going to use? Wouldn't they have to show an injury to themselves, particularly? They do show injury. The injury is under the ADA, the Americans with Disabilities Act. It's a discrimination claim. Yeah, but that's an injury, a specific injury to the potholes and whatever the circumstances were of the individual case. They're not showing injuries beyond that, citywide, are they? Why do they have standing to raise these other, you know, the broader claim that the city is falling down on its job everywhere? The pedestrian pathways as a right-of-way program, it's operated as a program by the city. It's a program, service, or activity that must be maintained in an accessible way. Yeah, but standing requires injury in fact, right? Right. So I get it if he's saying there's a pothole in front of my house, I roll over it every day. I'm trying to get past this and I always have to go around the pothole, right? Then he's got injury in fact. But if there are parts of the city where he's never gone before and has no intention of going, I think the point is he would have no standing, they would have no standing, to challenge that, right? Just like they would have no standing to challenge potholes in Kansas City, right? They may have standing to challenge potholes in Kansas City. If they have never alleged that they've been there or they're going back? That's not the case here. No, no, no, I know, I know. Just let's take it one step at a time. It was hypothetical. You would agree if they said I live in Troy, I've never left Troy, I never want to leave Troy, but I'm suing Kansas City for ADA noncompliance. They could not do that because they would lack standing, Article 3 standing to do that, right? Stay with my hypothetical. That hypothetical could be addressed by looking at the Bernstein v. City of Newark case. I'm sorry, is that a yes or a no? That's a yes or a no. I think that it depends because it depends on what their relationship is and their intention. I just, no, no, I just gave you. Okay, when we give a hypothetical, I understand it may not be the hypothetical that reflects reality, but just stick with it, right? Because we'll modify the hypothetical to get some useful observation about the case at hand. In my hypothetical, I just said if they've never been to Kansas City and they have no intention of ever going to Kansas City, you would agree that they can't sue the city of Kansas City for ADA failure to maintain curb cuts, right? Or are you saying that there's something that depends? Accepting my facts, what does it depend on? Looking at the Bernstein v. City of New York case, I would say yes, you're correct. They would not have standing. Okay, so then what's the difference between the other side of Troy where they've never been and they never claimed that they want to go that's any different from Kansas City? The city of Troy is a very small place. It's the entire city of Troy is about half the size of Manhattan, and these are individuals. That's pretty big. They've lived in the city of Troy for decades now, and they have no intention of leaving the city of Troy, and they specifically pleaded that they go to specific places throughout the city of Troy. I kind of thought maybe you would say maybe there are some areas on the other side of town that they're never going to visit, and they wouldn't have standing to get a remedy with respect to those places, but they do allege that something does happen to them, right? They say they attempt to use the sidewalks and pedestrian crossings and so on, and they can't do it because of obstructions. They sometimes have to go back and then go on the street, and that exposes them to additional dangers, right? So is it possible to say, well, maybe they don't have standing to get an injunction with respect to the entire city of Troy, but the complaint at least suggests that there are some areas that they do use regularly where they do suffer an injury and are likely to suffer further. I guess my question is, is the only remedy they're seeking just a citywide remedy, or is it possible that there might be a narrow remedy that could redress their injuries? It could be that there would be a narrower opportunity to fashion a program-wide remedy that is directly relevant to the specific locations that they want to go. That's not the point that we're talking about. We're trying now to understand, at least I am, how they have standing to raise claims that have never caused them injury, about situations that have never caused them personal injury, just on the possibility of it. The inaccessible pedestrian pathway program that makes up the sidewalks, the curb cuts, that's made up by the sidewalks, curb cuts, and crosswalks, they are, in fact, inaccessible to them, which is why Mr. Lugo and Seaton, they resort to using the streets to get around. The question is, you seem to be trying to paint yourself into a corner here that it's all or nothing, that they either get the entire city of Troy under an injunction or nothing. But I think what we're suggesting is, isn't there a middle ground where potentially they could show standing and say, well, there's this restaurant I like to go, but I can't get in because there's no curb cut. I like to go to City Hall, and I've tried to go to City Hall, or I have an intention to go to City Hall, but I have never gone because I know there's no curb cut. And they could make a list, whether through affidavits or depositions or whatever. Are you saying, though, that it's all or nothing? That either they get the whole city under compliance or you lose? We're at the pleading stage right now, and what are... You're at the pleading stage? I thought there were depositions. Well, I mean, the case, in fact, has gone through all of discovery, but where we're at now in this appeal is we're talking only about the pleading documents, and that even though we have a whole record of thousands of pages of documents that were on before the district court... Okay, but that's a question of what was the proper scope. Hang on. That's a question of the proper scope of the record for figuring out whether they have standing. Let's assume, for the sake of argument, we're allowed to look at all the pleadings. District courts should have, and we should look at all the depositions. What have you, in your view... Let's just back up here to my previous questions. Are you shooting for everything or nothing, in your view? Is that it? We have a binary distinction of two possible outcomes. You want us to issue an injunction as to the entire city or nothing at all. Is that what you want? From the appeal, Your Honor? Yeah. No. What we're looking for from the appeal is to vacate the lower court's dismissal on the pleadings, which is the Rule 12 dismissal, and we're asking for this case to be remanded for a review on summary judgment. Because all you have to show in order to attain that is that there is some injury, right? Correct. Because it's about standing, so it's about injury causation and regressibility. So the fact that they tried to use the sidewalks and pedestrian walkways and they couldn't, and there's reason to believe they're going to do that again because they live there, means that they're suffering an injury. Maybe they're not going to go to any particular location in the city of Troy, but they are going to leave their house, and so at least the area in front of their house is an area they're going to try to use. That's correct. Then it strikes me, I mean, you talked about the depositions, right? So in the depositions, there are more specific allegations, right? So Lugo says that it's inaccessible to access City Hall or Samaritan Hospital, and Seton says that there's some food pantries or the 6th Avenue bus depot that can't be accessed. So why isn't that in the complaint about particular areas that they travel? I suppose it could be, right? It could be, yes, absolutely. And if there were question at any point in time during the prosecution of this case, then there may have been a need to amend the pleadings if there was a question from the defendants of what exactly is the scope here. But that wasn't ever a question at issue throughout the two years of a fairly intense fact discovery and then subsequently expert discovery by both parties, by engineers that created or they surveyed and created reports specifically on accessibility. So if there were ever a question about the location at issue prior to the dispositive motion practice, then that is a point in time where we should- Well, that's mootness, right? I get that, right? Even if they did fill the pothole, is it ADA compliant or is it a big bumpy lump of asphalt or whatever? But that's mootness, right? I think the question here is standing, which is- I'm going back to Lujan, right? The idea is if someone says you're going to develop something in the wilderness that prevents anybody from ever seeing this hummingbird before- Oh, and by the way, I personally have no intention of ever going to see the hummingbird. I've never claimed I did. And we said, well, you don't have standing, right? So I guess the question is how broadly or narrowly are we supposed to handle that when we're talking about ADA compliance in the city? I can see if someone says, well, look, I want to go to that restaurant. There's no curb cut. You've got standing. But if someone says, oh, and I'm aware that there are no curb cuts somewhere else, isn't that really like Lujan saying, and I'm aware that if the dam gets built, there won't be hummingbirds, but they haven't alleged that they're going to go see the hummingbirds. They haven't alleged that they're going to use these curb cuts on the other side of town. Do you see my point is to what extent? Because I think the fundamental trick here is you don't have a class allegation. If you had someone who said, look, there are three curb cuts I would love to use. I can't use them. They're not there. And I'm typical of a class of users or of potential plaintiffs in Troy who live all over the place, and they've all got their own curb cut issues. Then I could see your point. But you or this case was not litigated with a class allegation, or was it? It was not, Your Honor. It's two individual plaintiffs who are wheelchair users. Which I guess raises the question to me, why wouldn't this be? I mean, I don't know. I'm kind of baffled why it wasn't brought as a class. Well, it's a programmatic claim. Because that's typically, right? You have two or three people who say I have three or four instances. Everybody's got their own problem. Make us a class. Right. Well, under the ADA, 14 U.S.C. 12-132, it says from Congress, they have carved out rights and recognition for people with disabilities to not face discrimination. And they say no qualified individual with a disability shall, by reason for such disability, be excluded from participation in or be denied the benefits of the services, programs, and activities of a public entity. So the sidewalks and the walkways and so on is a public service. And they can't be excluded from them. Right? So that's true that that's what the cause of action under the ADA says. But in order to have standing, it has to be likely that they are going to be excluded from those services. And the district court seems to think, well, it's speculative as to whether they're going to go all over the city and so on. But I guess I would think that your answer to my colleague's question is, well, it's at least plausible they're going to go around the city in which they live. Right? They allege that they can't use the sidewalks. They have to go in the street. And that exposes them to danger. And so it's not going to be the fact that they're just going to stay inside for the rest of their lives. And so it's at least plausible they're going to travel somewhere on the sidewalks. Right? Yes, exactly. And this is their hometown. They live here. They could, at any moment, want to go anywhere to any of the businesses. Well, that's a little much. Right? But at any moment, they might want to go anywhere. That just seems like they have some generalized intention. Like if there is some place on the other side of town that they've never been and they don't have any plans to go to, it's not obvious that they are suffering an injury because there's no ramp at that location. But I guess what I'm just trying to get you to say is the complaint alleges at least some places that they are going to go that are inaccessible. Is that true or not true? That's true. Well, the complaint alleges generally that they want to go through the city of Troy using the pedestrian pathways. And they're not accessible. So they cannot go from point A to point B because of the barriers that they'll face. What's point A and point B? Point A, I assume, is their home. Yeah. And what's point B? Where they need to go. But those details aren't provided in the complaint because we're pleading a program-wide inaccessibility. But if there's program-wide inaccessibility, they still have to be going somewhere in order to suffer an injury from the inaccessibility. So what's a place that they go to from their home? Drawing the summary judgment record. Yeah, that's on the summary judgment record. But draw on it. Tell us. In the summary judgment document, the record describes that through both the testimony and the really mainly through the testimony and deposition, that Ms. Seaton wants to go to several places. She wants to go mainly within the core downtown area. There's a food pantry on Hoosick Street. There's some city buildings. So let me ask you about that. And this is one of those tricks. If this were a pro se case, in some ways it would be easy because we'd be construing all this stuff wildly in their favor, bending over backwards. But as I read the deposition transcript, it never said I want to go to this food pantry. It's like I can't go or I haven't been able to go. When I wanted to cross the street from one food pantry to the other, I couldn't. But, again, in Lujan, you're supposed to allege or state a future intention. And the fact that at some point, some undesignated point in the past, wasn't able to cross from one to the other, I guess we can draw an inference that she wants to do that again in the future. But here it was represented by counsel. Why was that question not drawn out? That's such an obvious question. And do you plan to go back to that food pantry? Yes, I would if I could. Okay. The Lujan test, yes, that's the umbrella test for standing. But in this court, there is a test called from the Chrysler versus 2nd Avenue Diner case that sets the standard for demonstrating when you have standing under an ADA lawsuit. And that case is from 2013. And it's a three-pronged test. First, that the plaintiff alleged a past injury under the ADA. Second, it's reasonable to infer that the discrimination would continue. And third, it's reasonable to infer, based on past frequency of the plaintiffs and their proximity to the defendant's program, that they have a likelihood of an intent to return. And the problem is you don't have that third part really well, right? There's no frequency. I could see that if you said, look, Seaton, you know, has been to the food pantry, can't cross the street. Okay, there's number one, right? Past injury. Hasn't been able to do it. Number two, you know, there's no suggestion that they've ever put curb cuts. I think she basically said there's no curb cuts there. We can assume that to be or infer that to be in the present tense as well. But there's no third part about, well, how often should she go back? Was this once or twice? And, again, I can kind of see that if this were pro se, we would say, well, look, you know, they didn't say, they weren't counseled. How can we expect somebody to give us some statement on that third prong? Or you're saying that it's a reasonable inference and that even here, even counseled, even when counsel could have asked the question, didn't ask the question, we can infer the third prong from the first two prongs. The deposition testimony, it was done by defendants. Defendants brought our clients during COVID, really the height of COVID, into a virtual space. And they had a deposition with both of the plaintiffs in the virtual space. And the defense counsel asked a series of questions, but they did not ask questions along the line. Right, but no affidavits then, I guess I should say. But no countering affidavits. Well, we provide affidavits of the intent to use the pedestrian pathway system. And I guess you would also say that the complaint alleges it, right? So the complaint says, paragraph 17, plaintiff Seaton regularly uses or attempts to use the city of Troy's sidewalks, curb cuts, pedestrian crossings, and roads. Plaintiffs are often unable to use the sidewalks due to poor maintenance. Plaintiffs are frequently unable to use the sidewalks due to poor snow and ice removal. Plaintiffs must enter the streets, and that's more dangerous, and so on. I guess you would say that the allegation that they regularly use or attempt to use the sidewalks indicates that it's an ongoing problem. And that they're going to keep trying to use them and keep encountering these barriers. Yes, that's true. That's correct. And maybe that's not an allegation that they're going to some particular location downtown. But they're going somewhere, and they're going to keep doing it. And to the extent that Congress wanted a person to make that assertion, those very detailed assertions about where they want to go within the program that is operated by the municipality, they would have included that. Or the Department of Justice would have created— Let me just suggest this. Let me just suggest the plaintiff's case, it sounds to me, could have been made a lot easier by just making those very specific allegations. We wouldn't even be having this discussion, right? If there was an affidavit that wasn't sort of generic, but actually said, look, I like to go to the CVS. I've gone 16 times over the last three years. There are no curb cuts. That's where my prescriptions are. I have to still go to the CVS, and I need to fill my prescription every week. We wouldn't even be here, right? I mean, as a litigation strategy, instead of being right by the wire, you make it easy on yourself, right? But then you're going to court whenever there is—you're putting a burden on a person with a disability. No, I'm not talking about making the burden. I'm not saying you necessarily win or lose. I'm just suggesting as a litigation strategy, playing it that close to the wire is generally not the wisest thing. Why don't we hear from your— To address that point, I'm not sure it puts an excessive burden on them. I mean, you would probably acknowledge that if somebody alleged in the complaint, well, I normally drive everywhere, so I don't really use the sidewalks, but one time last year I used the sidewalks, and I found them difficult to use, and therefore I'm suing. You'd say, well, you've said you don't usually use the sidewalks, so, like, there's no reason to think that you weren't going to suffer an injury. You'd agree that there's no standing in that kind of a case, right? Yes, absolutely. You're just saying that your case is different from that kind of a case because you do allege that your clients regularly use the sidewalks, and that means they're going to keep doing it. Yes, absolutely. Okay. Why don't we hear from Mr. O'Connor for the appellate? Good morning. I'm Tom O'Connor for the City of Troy. The existence of subject matter jurisdiction ordinarily depends upon the facts as they exist or are alleged at the time the action is commenced. Applying that standard, this court need not go beyond the complaint and a couple of excerpts from the plaintiff's deposition to affirm the district court's dismissal of this action. Was there any... I'm sorry. Was there any litigation... This hearing aid is working. This one is out for repairs. Okay. Do you want to switch ears? Was there any litigation over filing an amended complaint? Is there any allegation of... Was there any litigation over filing an amended complaint? No. There was no request and there was no filing of an amended complaint. As I point out... I mean, there's a lot more information that the plaintiff has now than they had presumably at the time of the filing of the complaint. So an amended complaint could fill in all these details for them. You would agree with that? I'm not sure I agree that they didn't have adequate information to properly plead a complaint in this case. Well, now they have the specifics. There's deposition testimony. There are pictures. There's all sorts of things that could have been included in the complaint. Well, if they had listened to their clients or at least interviewed their clients before they commenced the action, perhaps the action wouldn't have been filed. Lugo testified... Well, you're saying it wouldn't be filed. So we're talking about standing, right? So standing, there needs to be injury causation and regressibility. So let's say the complaint said, you know, I have to travel every day in my wheelchair on the sidewalks from my home to a place where I work, which is downtown in Troy. And whenever I do that, I can't do it because they don't maintain the sidewalks in a way that it's accessible to me. And I have to keep doing it because I have to keep showing up to my job, so I end up going in the street and not using the sidewalks, and that exposes me to additional danger. They'd be standing in that case, right? I don't think that would be adequate. Why would that not be adequate? What is absent is concreteness, specificity... Well, why isn't that concrete? I have to travel every day from my home to a specific location in downtown Troy, and I can't do it, and it's because of the city's noncompliance with the ADA. And if they were required to be in compliance, I would be able to do it. Why would that not satisfy injury causation and regressibility? I would say, reluctantly, perhaps. However, in this case, Mr. Lugo said, when he was asked if there was another location, he said, no, I'm fortunate, paraphrasing, that everything I need is close to me and I don't have to travel far for what I need. But even if he doesn't have to travel far, I mean, I'm looking at the complaint, right? He said, let me finish, let me finish. Oh, wait, no. Well, let me just... Let the judge finish. That's how we operate. You can add the additional point, but let me just add something to it. So if the complaint says, Plaintiff Seaton regularly uses or attempts to use the sidewalks, curb cuts, pedestrian crossings, and roads. Plaintiffs are often unable to use the sidewalks due to poor maintenance. Plaintiffs are frequently unable to use the sidewalks in the winter due to poor snow and ice removal. Plaintiffs must enter the streets in their power wheelchairs to travel as pedestrians, and traveling causes them additional injury. They're saying that they regularly use the sidewalks. Even if he doesn't travel very far, he's going somewhere, right? There's an allegation that they do regularly want to use the sidewalks, and they're unable to do so, and they're at a disadvantage compared to people who are not confined to wheelchairs. And that injury would be redressed if the city of Troy were required to maintain the sidewalks the way they request. My response to that, if it were alleged, as you suggest, it would not satisfy the irreducible minimum of concreteness, specificity, and imminence. So why wouldn't it? Because he doesn't say exactly where he tries to use the sidewalks? Because that's important. But why isn't it a reasonable inference that he at least uses the sidewalks outside his own home? His or her own home? I'll concede that. Okay, so if it's a reasonable inference that they at least have to travel right around the area of their home, why shouldn't we infer on a motion to dismiss from these allegations that they're going to do that at some point, and they're not able to do it to the same extent as somebody who's not confined to a wheelchair? Respectfully, your recitation is hypothetical and not actual. Mr. Lugo testified. He goes to the recreation center, which is four blocks away on weekdays except Thursday, and he hasn't alleged, it is not alleged anywhere, that there are any defects on those four blocks. So you're saying that even though it says they regularly use or attempts to use the sidewalks, it's not plausible that where they regularly use them, they're facing obstacles. Is that your point? It's not alleged, right. Can I ask you about Seaton's deposition? And I'm looking at pages 1372, 1373, where they talk about the spot of the accident. And then they say, have you been back to that location since the accident? And she basically says yes. And she says, well, I've gone past it, but I've never used that sidewalk. It's now there's a ramp there. Everything is clear. You can see what it is. But I don't. I stick to the street. And then they say, where are the areas that you frequently use the sidewalks in Troy? And she says downtown Troy, going to the park area, going along the restaurant, and there really is no ramp there. It's a disaster. She says she's using the street. So that sounds like a very specific allegation, in particular as to this restaurant. And I understand there seems to be a common understanding about which restaurant everyone's talking about. Why is that not sufficiently concrete, at least as to those particular places? They said, where do you frequently go? They aren't alleged in the complaint. And this introduces us to the question of facts, which are extraneous to the complaint. But I thought we could look at facts when we go to 12B1, when we're looking at subject matter jurisdiction. Can't we go outside the complaint? Not necessarily. You can. Yeah, so why not here? I would refer the court to the Hardy case that was decided by this court in 2022, which has strikingly similar facts on the issue of subject matter jurisdiction. I mean, it's a little weird that you're saying you can't look at facts outside the complaint, because I just read to you from the complaint about how— I didn't say that you can't. Excuse me, let me just finish the question. So you're saying we shouldn't look outside the complaint to facts that are extraneous. But I read to you from the complaint about how the plaintiffs allege they regularly use the sidewalks and the pedestrian crossings. And I say, isn't it a reasonable inference that they would at least regularly use those outside their own homes, and these obstacles they describe might be there? And you say the reason why we shouldn't make that inference is because of deposition testimony that says that he's only doing it within a four-block radius and he hasn't said specifically that that's where the obstacles are. So if we're back to only the complaint, then aren't we back to the idea that it's a reasonable inference that they travel around their specific home? And if we're looking at the deposition testimony, then don't we have to credit the full deposition testimony that says that they regularly travel to this restaurant downtown and the food pantries and so on? That's up to the trial judge. That's up to the district court. In the Hardy case... What does that mean, it's up to the district court? I mean, we review the district court's decision, right? The district court might be wrong about it. In the Hardy case, as in this case, the complaint was deficient on the subject matter jurisdiction issue. And the defendant, as here, moved for summary judgment. And the plaintiff, in opposing summary judgment, submitted an affidavit with allegations whose objective were to enhance the plaintiff's position on standing. This court and the district court did not consider that affidavit and dismissed the case based upon the deficiency of the complaint. This court affirmed, and in a discussion of the case, said there are... where the extraneous matter is submitted by the plaintiff to enhance his position on the standing issue, the district court has discretion to disregard it. And by the way, the court has said, in this context, the court has a lot of latitude in fashioning the analytical framework within which to consider and decide this type of a motion. Can you remind me the procedural posture of the Hardy case? I just don't remember. Was that already through discovery at that point? Gee, I can't tell you, Judge. I'm sorry. At any rate, in this case... I'll just go back to what I was saying before. So when I had asked you, you know, they allege in the complaint they regularly attempt to use the sidewalks and face obstacles and can't use them. And I said, wouldn't it be a reasonable inference to say that they're going to at least use the sidewalks around their own home? And you said yes. And then I said, well, why wouldn't that be sufficient? You said, well, because Mr. Lugo said in his deposition that he only travels within a four-block radius and hasn't said that there's obstacles there. But doesn't that argument rely on something extraneous to the complaint? Yes. Right, so your argument that he says it's only a four-block radius relies on something external to the complaint. Yes, but... So if we're only looking at the complaint, then wouldn't the reasonable inference be that they at least travel on the sidewalks around their own homes? And it's plausible they're going to do so again and confront obstacles? Speculative, yes. Why is that speculative? Because you said it's possible. Okay, so you think it's possible but not sufficiently likely that they're going to go on the sidewalk outside their own home? It's not concrete enough. Okay, I think I have that argument. Can I ask you a clarification of this standing? Let's say, hypothetically, that there was at least one or two, let's say two locations that one of the plaintiffs had adequately alleged standing for. This is a hypothetical, okay? Other than what's in this complaint? Yeah, this is a hypothetical. Okay. Hypothetically, let's say that there were allegations in the complaint saying I go to the CVS a mile away in my wheelchair every single day and there are no curb cuts. And I go to my job a mile away every single day and there are no curb cuts. Okay, so everyone agrees that you have all the elements in place for those two locations, okay? Now the question is, would the entire case survive? Or would you suggest that there's somehow the case, yes, some of it survives but it gets trimmed down, that what, you would only have trial as to those two locations? Or would you say, if they say, look, I have given you specific allegations that we all agree in my hypothetical are enough for those two locations, I assume the other side would say, therefore, they can, at trial, challenge curb cuts all around the city. And they could testify. Maybe when they testify they would mention three or four other locations. But would the standing as to two locations be sufficient for them to go to trial as to the whole city? And then it just bears out where the proof is. Maybe they don't prove anything. Maybe they don't even prove that they go to work or the CVS every day. We start with the trial record. But would they at least have survived, would their entire case have survived assuming, hypothetically, that they had at least one or two examples where absolutely definitively there is standing? I say no. So how would that play out at trial or on remand? Let's say, hypothetically, we were to say that. There are two locations as to which, let's say, for the sake of argument, Plaintiff Seaton has absolutely alleged standing. And we said that. We vacated. We sent it back. What would our decreed language look like? And I know you wouldn't want this, but assuming that's what our ruling is, what would the proper ruling from this court be? I would suggest that the court would rule that only those two incidents could be continued and the rest would be dismissed. Okay, so a trial on those two narrow issues is what you think we would do in that hypothetical. Okay. All right. Thank you very much. We appreciate it. We've kept you up beyond your time. Why don't we hear from counsel for the appellant? Two minutes of rebuttal. Thank you. First, I have two points. First, this case can and should be reviewed. The entire record should be reviewed at this point to come to a conclusion on this case. That is why we filed for summary judgment. And yet the court, as it has been identified repeatedly today, that the lower court ignored the record except for very small portions of the record. I'm not going to go into those because I think we discussed those carefully. It's also in our brief. The second point is that, and most importantly, is that personal injury or property damage is not a requirement to plead an ADA case. The injury, in fact, is the discrimination of a person with a disability. And in our case, we have two individuals who are wheelchair users. They require using their assistive devices to go anywhere.